UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WALEED BIN KHALID ABU AL-WALEED AL-QARQANI, *et. al.*, | § § § | |
| *Petitioners*, | § § | |
| v. | § § | CIVIL ACTION H-18-1807 |
| ARABIAN AMERICAN OIL COMPANY AND ARAMCO SERVICES COMPANY, | § § § § | |
| *Respondents*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before this court is respondent Aramco Services Company's ("ASC") motion to dismiss. Dkt. 16 Petitioners responded. Dkt. 28. ASC replied. Dkt. 32. Having considered the motion, response, reply, and applicable law, the court is of the opinion that the motion to dismiss should be GRANTED.

**I. BACKGROUND**

In 1933, the Saudi Arabian government and Standard Oil Company of California ("SoCal"), now Chevron, signed a Concession Agreement ("Concession Agreement"). Dkt. 9 at 5. The Concession Agreement gave SoCal surface rights to land in Saudi Arabia to search for oil. *Id.* at 6. Arabian American Oil Company ("Aramco") was organized during this time as a subsidiary of SoCal. Dkt. 28 at 11. ASC, once known as Aramco Realty Company, was organized in 1950 and was a subsidiary of Aramco, which was a subsidiary of SoCal. Dkt. 28 at 10; Dkt. 29-4; Dkt. 29-3.

By 1988, the Saudi government had bought all of Aramco's assets and established the Saudi Arabian Oil Company ("Saudi Aramco"). Dkt. 9 at 6; Dkt. 28 at 11. Two years later, in 1990, Aramco dissolved. Dkt. 16-4; Dkt. 16-3 (Horton Declaration).

Petitioners are the heirs, beneficiaries and titleholders of the lands that were subject to the Concession Agreement. Dkt. 9 at 4. In June 2015, Petitioners obtained an arbitral award against Chevron entities, which included Chevron U.S.A. and Chevron Saudi Arabia, for failure to compensate Petitioners for the use of the land subject to the Concession Agreement. Dkt. 9-2 at 6. The arbitral award also purported to bind Aramco, which at that time had already dissolved. *Id.* Petitioners brought the present suit seeking to confirm the arbitral award against ASC. *Id.* at 7. Petitioners allege that ASC is a subsidiary of Aramco. *Id.* at 2. ASC has moved to dismiss the enforcement of this arbitral award under FRCP 12(b)(1) and FRCP 12(b)(6) because it was not a party to the arbitration agreement. Dkt. 16.

## II. STANDARD OF REVIEW

### A. Lack of Subject Matter Jurisdiction

Rule 12(b)(1) allows a party to seek dismissal of an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2013). Federal-question jurisdiction "exists only in those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Willis of Tex., Inc. v. Stevenson*, No. H-09-cv-0404, 2009 WL 7809247, at *4 (S.D. Tex. May 26, 2009) (Ellison, J.).

"In determining whether the court has subject matter jurisdiction, [it] must accept as true the allegations set forth in the complaint." *Crane v. Johnson*, 783 F.3d 244, 250–51 (5th Cir. 2015). "A trial court may find that subject matter jurisdiction is lacking based on '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Wolcott v. Sebelius*,

2

635 F.3d 757, 762 (5th Cir. 2011) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

**B.     Failure to State a Claim**

Rule 8(a)(2) requires that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A party against whom claims are asserted may move to dismiss those claims when the nonmovant has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted). While the allegations need not be overly detailed, a plaintiff's pleading must provide the grounds for his entitlement to relief. *Id.* That "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Evaluating a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Ultimately, the question for a court to decide is whether the complaint states a valid claim when viewed in the light most favorable

3

to the plaintiff." *NuVasive, Inc. v. Renaissance Surgical Ctr. N., L.P.*, 853 F. Supp. 2d 654, 658 (S.D. Tex. 2012) (Ellison, J.).

## III. ANALYSIS

### A. Subject Matter Jurisdiction

The Federal Arbitration Act provides federal courts with subject matter jurisdiction over any "action or proceeding falling under" the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). 9 U.S.C. § 203. For a federal court to have jurisdiction under the Convention: "(1) there must be an arbitration agreement or award that falls under the Convention, and (2) the dispute must relate to that arbitration agreement." *Stemcor USA Inc. v. CIA Siderurgica do Para Cosipar*, 927 F.3d 906, 909 (5th Cir. 2019).

An arbitration agreement falls under the Convention if: (1) there is a written agreement to arbitrate the dispute; (2) the agreement provides for arbitration in the territory of a Convention signatory; (3) the agreement to arbitrate must arise out of a commercial legal relationship; and (4) at least one party to the agreement is an American citizen. *Stemcor USA Inc.*, 927 F.3d at 909–10.

ASC argues that the court lacks subject matter jurisdiction because there is no agreement to arbitrate with ASC. Dkt. 16 at 11–12. Petitioners argue that the arbitral award binds all Chevron entities and that "Chevron entities include Aramco, Chevron of USA and Chevron Saudia Arabia and affiliate companies." Dkt. 28 at 30 n. 27. However, the arbitral award only lists three Chevron entities: "Chevron Company of USA, Chevron Saudi Arabia and Aramco." Dkt. 9-2 at 6, 26. ASC is not a named entity in the arbitral award or in the agreement to arbitrate in the Concession Agreement.

A non-signatory may be bound by an arbitration agreement under the following six theories: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; (5) estoppel;

4

and (6) third-party beneficiary. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003); *see also Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002) (holding that arbitration agreements may apply to nonsignatories only "in rare circumstances"). Petitioners argue that ASC is a subsidiary of Aramco, and thus bound by the arbitral award. Dkt. 28 at 35. However, as petitioners themselves have acknowledged, ASC is Saudi Aramco's subsidiary, not Aramco's. *See* Dkt. 9 at 1, 5. At one point, ASC was a subsidiary of Aramco, but Aramco dissolved in 1990 and ASC is now a wholly owned subsidiary of Saudi Aramco. *See* Dkt. 16-4; Dkt. 16-3. ASC did not exist at the time of the Concession Agreement that included the arbitration agreement. Dkt. 16-3 (noting that ASC, then known as Aramco Realty Company, was not established until 1950). Further, ASC had already been bought by the Saudi government at the time of the 2015 arbitral award. Dkt. 9 at 6. ASC is not affiliated with Aramco. Dkt. 29-3. If the court were to accept Petitioners' argument that ASC is bound to the arbitral award because it was once a subsidiary of Aramco, that would mean that every single company that has ever been a subsidiary of another company at one time would be liable for the actions of its past parent company even though it is no longer affiliated.

Petitioners also point to portions of the arbitral award that address successor and affiliate liability as evidence that ASC is liable. Dkt. 28 at 36. However, the cited portions do not support Petitioners' argument. First, the section addressing successor liability only addresses the issue of why Chevron Company was subject to arbitration despite the fact that the Concession Agreement was between So-Cal and Saudi Arabia. Dkt. 9-2 at 25–26. Second, the section addressing affiliate liability simply provides a statement of law. Specifically, it states that "it is established under jurisprudence and judicial principles that the Arbitration Clause provided for in a contract concluded with some company extends to the other companies affiliated with such company, and is deemed one of its entities, if all such entities shared in the execution of such contract." Dkt. 9-2 at 26. Such a

statement does not provide that ASC is liable or otherwise bound to any arbitral award because ASC is not affiliated with any of the parties bound to the arbitration agreement nor did it share in the execution of the contract. Because there is no written arbitration agreement that lists ASC as a party and none of the exceptions to bind nonsignatories apply, the court does not have subject matter jurisdiction to hear this case.

Petitioners point to *Sarhank Grp. v. Oracle Corp.*, 404 F.3d 657 (2d Cir. 2005) for the proposition that the court must assume subject matter jurisdiction even though ASC is not a signatory to the arbitration agreement. In *Sarhank Group*, a subsidiary had entered into an agreement that included an arbitration clause against the petitioners. *Id.* at 658. When a dispute arose, petitioners sought to arbitrate against the subsidiary and the parent company. *Id.* The parent company objected to the arbitration because it had not signed an arbitration agreement. *Id.* The arbitration panel rejected that argument and issued an arbitral award against the parent company and the subsidiary. *Id.* Petitioners sought enforcement of the arbitration award in a federal court in New York. *Id.* at 659. The parent corporation argued that the district court lacked subject matter jurisdiction because it was not a party to any arbitration agreement. *Id.* The Second Circuit held that a district court must assume subject matter jurisdiction when a party challenges the district court's jurisdiction based upon the merits of the case. *Id.* at 660.

Here, ASC's subject matter jurisdiction arguments do not depend on its view of the merits of the case. Unlike the parent corporation in *Sarhank Group*, there is no arbitral finding that ASC is liable. ASC is not one of the listed entities in the arbitral award and this is the first time ASC is contesting whether it should be forced to arbitrate. As such, the court will not assume subject matter jurisdiction.

**B. Failure to State a Claim**

Even if the court had subject matter jurisdiction, Petitioners' claim still fails under Rule 12(b)(6) because, under the facts, ASC is not bound to the arbitration agreement and none of the theories to bind a nonsignatory apply.

## IV. CONCLUSION

ASC's motion to dismiss is GRANTED. Because the court did not rely on the evidence in the motion in limine (Dkt. 43), the motion in limine is DENIED AS MOOT. Additionally, ASC's motion for sanctions (Dkt. 26) is DENIED.

Signed at Houston, Texas on August 2, 2019.

_____
Gray H. Miller
Senior United States District Judge